UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CLIFTON AUGUSTUS WILLIAMS,

    Plaintiff,

v.                                                             Case No. 3:14cv601/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Clifton Augustus Williams' applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, for all proceedings in this case, including entry of final judgment. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, will be affirmed, and the applications for benefits will be denied.

## ISSUES ON REVIEW

Mr. Williams, who will be referred to as claimant, plaintiff, or by name, raises two issues. He claims: (1) the Administrative Law Judge ("ALJ") failed to pose a

complete hypothetical question to the vocational expert which comprised all of Mr. Williams' impairments; and (2) the ALJ erred as a matter of law in failing to consider the severity and impact of claimant's obesity on his ability to work, or in combination with his other severe and non-severe impairments. (Doc. 14).

## PROCEDURAL HISTORY

On January 14, 2009, Mr. Williams filed applications for DIB and SSI, alleging disability beginning on January12, 2009. T. 62.[1] The applications were denied initially on May 1, 2009, and upon reconsideration on July 16, 2009. T. 62. Plaintiff appeared at a hearing before an ALJ on August 24, 2010, and the ALJ subsequently issued a decision finding plaintiff was not disabled from January 12, 2009, to September 7, 2010. T. 62, 74-75.

On November 17, 2010, plaintiff completed new applications for DIB and SSI and again alleged disability beginning on January 12, 2009. T.169-84. The Commissioner denied the applications initially and on reconsideration. T. 99-106, 113-18. Claimant appeared before the ALJ for a hearing on November 26, 2012. T. 38. After the hearing, the ALJ found claimant was not disabled under the Act from September 8, 2010, through December 14, 2012. T. 17-37. The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-6. The determination of the Commissioner is now before the court for review.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the

---

[1] The administrative record, as filed by the Commissioner, consists of eight volumes (docs. 12-2 through 12-9) and has 549 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

issues raised in this appeal:

- Claimant has not engaged in substantial gainful activity since September 8, 2010, the day after the date of the prior unfavorable Administrative Law Judge decision. T. 23.

- Claimant has the following severe impairments: uncomplicated diabetes mellitus, hypertension, and asthma. T. 23.

- Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 27.

- Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except claimant should avoid concentrated exposure to extreme cold, heat, wetness, and humidity, he should avoid concentrated exposure to noxious fumes and pollutants, and he requires work that is limited to simple, routine, and repetitive tasks. T. 27.

- Claimant is unable to perform any of his past relevant work. T. 30.

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. T. 31.

- Claimant has not been under a disability, as defined in the Social Security Act, from September 8, 2010, through December 14, 2012. T. 32.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Lewis v. Callahan*, 125 F.3d 1436, 1439

(11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986). When reviewing a Social Security disability case, the court "'may not decide the facts anew, re-weigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex*

*rel. Shea v. Astrue*, No. 2:10-cv-725-FtM-29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Case No. 3:14cv601/CJK

any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[3]

5.  Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, he is not disabled.

The issues raised here implicate step five. The Eleventh Circuit has explained the operation of step five:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citations omitted); s*ee also Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (*quoting Walker v. Bowen*, 834 F.2d 635, 640 n.3 (7th Cir. 1987)) ("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act.").

---

[3] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. *See* 20 C.F.R. §§ 404.1512, 416.912. ; *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

Case No. 3:14cv601/CJK

# FACT BACKGROUND AND MEDICAL HISTORY[4]

At the hearing before the ALJ, claimant offered testimony as to his health, daily activities, and work experience. He is 6'1" tall and weighs 260 pounds. T. 42. He alleged he is unable to work due to diabetes, asthma, high blood pressure, and gout. T. 45. His diabetes causes his eyes to "start burning" after watching TV for an extended period. T. 52. The medication he takes for diabetes makes him "sick all the time." T. 46. His asthma causes wheezing in his throat about twice a week but Ventolin alleviates the problem. T. 47. Claimant's high blood pressure causes him to "stay sick all the time" and he has problems with gout despite taking medication. T. 48. He has migraine headaches twice a day that last for forty-five minutes. T. 52-53. He also experiences muscle pain in his feet. T. 54. He is not able to walk long distances without shortness of breath, and cannot lift anything over ten pounds. T. 49. He can walk for thirty minutes, stand for twenty minutes, and sit for thirty minutes. T. 49. He is able to grocery shop on his own and takes public transportation or receives rides from friends. T. 50. He cannot climb a set of stairs and cannot use his knees to stoop or squat. T. 50. He can, without assistance, feed himself, bathe, and perform light housework. T. 51. He is able to attend church with his parents. T. 51-52. He spends a typical day watching TV and crocheting. T. 52. Claimant also suffers from depression, as well as stress-related anxiety. T. 53. From 2006 to 2009, claimant served food and washed dishes at the Pensacola Civic Center. T. 43-44. He

---

[4] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. The facts below, where not derived from the medical records, are based largely on plaintiff's testimony in that regard. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

Case No. 3:14cv601/CJK

performed custodial work for Rosie O'Grady's in 2005 and 2006, and for Escambia County from 2000 to 2005. T. 44.

From 2009 to 2012, plaintiff sought treatment for various conditions at the Escambia Community Clinic. In 2009, his weight ranged from 214 to 280 pounds. T. 371, 374, 377, 380, 383, 386, 388, 390, 396, 398, 401. From 2010 to 2012, his weight was noted to be between 250 and 284 pounds. T. 426, 429, 432, 438, 442, 446, 473, 479, 485, 487, 490, 523, 526, 537. His body mass index ("BMI") also consistently measured above 30.[5] T. 426, 429, 432, 438, 442, 446, 473, 479, 485, 487, 490, 523, 526, 537. On several occasions, Mr. Williams was diagnosed as obese. T. 423-24. He was advised to diet and exercise to lose weight and help control his blood pressure and diabetes. T. 375, 384, 433. The record contains little else concerning objective medical findings.

## ANALYSIS

Plaintiff claims: (1) the Administrative Law Judge ("ALJ") failed to pose a complete hypothetical question to the vocational expert which comprised all of Mr. Williams' impairments; and (2) the ALJ erred as a matter of law in failing to consider the severity and impact of claimant's obesity on his ability to work, or in combination with his other severe and non-severe impairments. (Doc. 14).

---

[5] "BMI is a measurement of body fat based on height and weight. It applies to both adult men and women. The National Institutes of Health [NIH] established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998). These guidelines classify overweight and obesity in adults according to Body Mass Index. Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. SSR 02-1P." *See Brown v. Barnhart*, 325 F. Supp. 2d 1265, 1271 n.18 (N.D. Ala. 2004). A body mass index of 30 or greater has been found to equate with obesity. *Id.* at 1272.

Case No. 3:14cv601/CJK

Claimant asserts that the hypothetical question to the vocational expert was incomplete because it failed to state that claimant is limited to "repetitive" tasks. (Doc. 14, p. 4-8). Based on this, plaintiff says the question did not accurately reflect the true residual functional capacity ("RFC") and, therefore, the vocational expert's testimony does not provide substantial support for the ALJ's determination that claimant can perform other jobs that exist in significant numbers in the national economy. (*Id.*).

As noted above, the ALJ found claimant had the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant should avoid concentrated exposure to extreme cold, heat, wetness, and humidity, he should avoid concentrated exposure to noxious fumes and pollutants, and he requires work that is limited to simple, routine and repetitive tasks.

T. 27. At the November 26, 2012 hearing, the ALJ posed the following hypothetical to the vocational expert:

> I would like you to consider a hypothetical individual of similar age, education and prior work history as this claimant. I would like you to assume an individual who could lift 20 pounds on an occasional basis, 10 pounds on a frequent basis, can sit at least six hours during an eight hour work day, stand and walk in combination at least six hours during an eight hour work day. Such a hypothetical individual would need to have a position which avoided concentrated exposure to extremes in heat or cold, wetness or humidity, would need to avoid exposure to dust, fumes and gases, would also require work that would involve no more than simple tasks with short, simple instructions.

T. 55-56. In response, the vocational expert testified that the hypothetical individual would be precluded from performing claimant's past relevant work but could perform

Case No. 3:14cv601/CJK

work as a production assembler[6] (DOT 706.687-010),[7] garment bagger (DOT 920.687-018), and poultry worker (DOT 525.687-074). T. 56. The VE further testified that all three occupations were "light duty." T. 56.

Although the ALJ omitted the word "repetitive" from the hypothetical, such is not harmful error here, because the jobs identified by the vocational expert can be performed by an individual limited to repetitive tasks. The job description for a production assembler in the DOT provides:

> Performs *repetitive* bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. Bolts, clips, screws, cements, or otherwise fastens parts together by hand, or using handtools or portable power tools. May tend machines, such as arbor presses or riveting machine, to perform force fitting or fastening operations on assembly line. May be assigned to different work stations as production needs require. May work on line where tasks vary as different model of same article moves along line. May be designated according to part or product produced.

---

[6] The transcript from the hearing indicates the vocational expert testified that the hypothetical individual could perform work as a "reduction assembler." T. 56. The DOT code provided by the vocational expert, however, corresponds to the job of "production assembler," which suggests the hearing transcript contains a typographical error. *See* Dictionary of Occupation Titles, 706.687-010, 1991 WL 679074.

[7] "The [*Dictionary of Occupational Titles*] and its supplement, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)*, comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs. The Commissioner recognizes the *DOT/SCO* publications as authoritative, and routinely relies on them 'for information about the requirements of work in the national economy.'" *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 612-13 (E.D. Tex. 2009) (*quoting* Soc. Sec. R. 00-4p, 2000 WL 1898704, at *2).

Case No. 3:14cv601/CJK

Page 11 of 17

*See* DOT 706.687-010, 1991 WL 679074 (emphasis added). As the Commissioner correctly notes, the *DOT/SCO* indicates all three occupations involve "[p]erforming REPETITIVE or short-cycle work[.]" (Doc. 15, p. 6); DOT 706.687-010, 1991 WL 679074; DOT 920.687-018, 1991 WL 687965; DOT 525.687-074, 1991 WL 674456. In addition, the "Guide for Occupational Exploration for each job begins with interest area 06." (Doc. 15, p. 6). The *DOT/SCO* "defines this interest area as 'industrial' involving 'repetitive, concrete, organized activities in a factory setting.'" (Doc. 15, p. 6) (*quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix A - Using Selected Characteristics for Occupational Exploration).

Moreover, recent district court decisions establish that vocational experts and ALJs often conclude that individuals limited to simple, routine, repetitive tasks are nonetheless capable of performing jobs such as production assemblers, garment baggers, and poultry workers. *See e.g.*, *Johnson v. Colvin*, No. 5:13-CV-509-FL, 2014 WL 4636991, *5 (E.D. N.C. Sept. 16, 2014) (vocational expert testified individual "limited to simple, repetitive tasks" could perform work "as an assembler"); *Logsdon v. Colvin*, No. 12-3522-REL-SSA, 2014 WL 1153061, *21 (W.D. Mo. Mar. 23, 2014) (vocational expert testified individual who could "pay attention well enough to carry out a simple routine or simple repetitive tasks" was capable of work as a production assembler); *Johnson v. Astrue*, No. CA 11-0460-C, 2012 WL 1565644, *3, 6 (S.D. Ala. May 2, 2012) (vocational expert testified that individual "limited to the performance of simple, routine, repetitive tasks" was capable of work as a production assembler); *Browne v. Comm'r of Soc. Sec.*, – F. Supp. 3d – , 2015 WL 5449911, *2 (S.D. N.Y. Sept. 16, 2015) (vocational expert testified individual "who could only do simple and repetitive tasks . . . would be able

to perform" job as a "bagger, DOT code 920.687-018"); *Strople v. Colvin*, No. 3:13-cv-1518-J-34MCR, 2015 WL 1470866, *3 (M.D. Fla. March 31, 2015) (affirming ALJ's decision where plaintiff was found capable of performing duties of a garment bagger despite being limited to "simple, routine, repetitive, tasks with up to 3-step commands"); *Jones v. Colvin*, No. 13-0259-REL-SSA, 2014 WL 3925547, *17 (W.D. Mo. Aug. 12, 2014) (vocational expert testified individual "able to perform simple, repetitive tasks" could "work as a garment bagger"); *Bao Yang v. Colvin*, No. C13-1565-RSM, 2014 WL 1775971 (W.D. Wash. May 5, 2014) (noting poultry eviscerator is "categorized as 'repetitive' work"); *McLean v. Colvin*, Civil Action No. 3:11-cv-00236, 2013 WL 1826435, *11-12 (M.D. Tenn. Apr. 30, 2013) (vocational expert testified that individual able to "maintain concentration and persistence necessary to perform routine, repetitive one to two step tasks" could perform job as a "poultry cleaner, DOT 525.687-074"); *Liles v. Astrue*, Civil No. 09-2034, 2010 WL 1345375, *5 n.7 (W.D. Ark. Mar. 31, 2010) (vocational expert testified that individual "able to perform activities with non-complex simple instructions that require little judgment, are routine and repetitive, and are learned by rote with few variables . . . could perform work as a meat processor, DOT # 525.687-074").

Thus, all three occupations the vocational expert identified can be performed by an individual limited to repetitive tasks. Because the ALJ's failure to include the word "repetitive" in the hypothetical did not affect the outcome of the case, the error is harmless and not a basis for remand. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (*citing Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

Plaintiff next claims the ALJ failed to consider the impact of obesity in determining the RFC.[8]  (Doc. 14, p. 8-12).  In particular, claimant says the ALJ should have considered the effects of obesity on the other impairments, as obesity could exacerbate the asthma and gout.  (Doc. 14, p.11).  Claimant concludes that because the ALJ failed to consider the impact of obesity on the other impairments, the RFC formulated by the ALJ is not supported by substantial evidence. (Doc. 14, p. 11-12).

Although the record corroborates Mr. Williams' obesity, it does not reflect that obesity caused any work-related limitations not already accounted for in the RFC. *See Wind v. Barnhart*, 133 F. App'x 684, 690-91 (11th Cir. 2005) (*quoting McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on [his] ability to work.").  In his application for benefits, plaintiff was asked to "[l]ist all of the physical or mental conditions . . . that limit your ability to work."  T. 198.  In response, plaintiff listed asthma, high blood pressure, learning disability, mental health, and diabetes.  T. 198.  He included no reference to obesity.  Similarly, at the hearing before the ALJ, plaintiff was asked "[w]hat kind of problems do you have that you believe make you not able to work?"  T. 45.  Plaintiff responded, "[d]iabetes, asthma and high blood pressure and then also I got the gout."  T. 45.  Neither claimant nor his attorney ever suggested obesity resulted in any functional limitations

---

[8] Although the ALJ's decision never specifically mentions obesity, it does note that practitioners at the Escambia Community Clinic advised claimant "to follow a restricted diet and to do walking exercise at his own pace to help with weight loss and glucose and blood pressure control."  T. 23.

or exacerbated claimant's other conditions.  Given that plaintiff never claimed his obesity resulted in functional limitations or affected his other conditions, the ALJ did not err in failing to consider obesity as a factor in formulating the RFC.  The ALJ is not obligated to consider, when evaluating claimant's record, any impairments that have not been specified by the claimant.  *See Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (*quoting Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)) (noting "it has been persuasively held that an 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'").

In addition, despite making the general assertion that "Mr. Williams' limitations as a result of his obesity, both standing alone and in combination with other severe and non-severe impairments, were not included in the ALJ's RFC assessment," plaintiff has failed to elaborate at all upon the nature of any obesity-related limitations.  (Doc. 14, p. 11-12).  Plaintiff has merely cited his weight and speculated about the possible effects of obesity.  *See* (Doc. 14, p. 11) ("This is necessary in Mr. Williams' case as the ALJ found him to suffer with a severe impairment of asthma and a non-severe impairment of gout, both of which *could* be further exacerbated by his obesity.") (emphasis added).  Both of the conditions that plaintiff claims could be affected by obesity–asthma and gout–were thoroughly discussed by the ALJ.  T. 23-24, 27-30.  The ALJ noted "the treatment records from the [Escambia Community Clinic] from September 2010 through September 2012 reveal[] no mention of complaints of . . . symptoms of gout, no diagnosis of . . . gout, and no prescribed treatment for . . . gout."  T. 24.  As for asthma, the ALJ indicated plaintiff's complaints of asthma were inconsistent, "[t]he evidentiary record contains no documentation of emergency room visits or hospitalizations for asthma attacks,

and the [Escambia Community Clinic] treatment records indicate that the claimant's asthma has also been shown capable of control with medications." T. 23-24, 27. The ALJ also stated:

> [T]he claimant's ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical impairments are not totally disabling. The claimant testified that he is able to care for his personal needs without assistance, able to perform all routine household chores, able to do his own shopping, able to prepare simple meals for himself, that he visits with friends, and that he attends church with his parents. The claimant also indicated that he enjoyed watching television and crocheting.

T. 30. In any event, the ALJ expressly accounted for plaintiff's asthma by formulating an RFC that reduced "his exertional capacity from very heavy to light" and required him "to avoid concentrated exposure to extreme cold, heat, wetness, humidity, noxious fumes, and pollutants." T. 28.

In his legal argument, plaintiff references a part of SSR 02-1p discussing the combined effects of obesity with other impairments. A pertinent part of the ruling, however, states that the SSA "will not make assumptions about the severity or functional effects of alleged obesity combined with other impairments." *See* SSR 02-1p. Indeed, "[o]besity in combination with another impairment <u>may</u> or <u>may not</u> increase the severity or functional limitations of the other impairment." *Id.* (emphasis added). The ruling also explains that "[t]he fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments." *Id.* Here, plaintiff identifies no record evidence that he complained of limitations stemming from obesity, nor any evidence that he complained, or a doctor concluded, that any of his other alleged impairments were exacerbated by obesity.


and the [Escambia Community Clinic] treatment records indicate that the claimant's asthma has also been shown capable of control with medications." T. 23-24, 27. The ALJ also stated:

> [T]he claimant's ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical impairments are not totally disabling. The claimant testified that he is able to care for his personal needs without assistance, able to perform all routine household chores, able to do his own shopping, able to prepare simple meals for himself, that he visits with friends, and that he attends church with his parents. The claimant also indicated that he enjoyed watching television and crocheting.

T. 30. In any event, the ALJ expressly accounted for plaintiff's asthma by formulating an RFC that reduced "his exertional capacity from very heavy to light" and required him "to avoid concentrated exposure to extreme cold, heat, wetness, humidity, noxious fumes, and pollutants." T. 28.

In his legal argument, plaintiff references a part of SSR 02-1p discussing the combined effects of obesity with other impairments. A pertinent part of the ruling, however, states that the SSA "will not make assumptions about the severity or functional effects of alleged obesity combined with other impairments." *See* SSR 02-1p. Indeed, "[o]besity in combination with another impairment <u>may</u> or <u>may not</u> increase the severity or functional limitations of the other impairment." *Id.* (emphasis added). The ruling also explains that "[t]he fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments." *Id.* Here, plaintiff identifies no record evidence that he complained of limitations stemming from obesity, nor any evidence that he complained, or a doctor concluded, that any of his other alleged impairments were exacerbated by obesity.

This court has found no evidence in the record demonstrating that additional limitations have been placed on plaintiff as a result of his weight, and plaintiff has not pointed to any such evidence in the record.  Here, a remand for the ALJ's failure to mention obesity is not required because such would not affect the outcome of the case.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (remand not required where claimant never mentioned obesity as a condition that contributed to her inability to work, even when directly asked to describe her impairments, and she only generally alleged that her weight made it more difficult for her to stand, walk, and manipulate her hands and fingers); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (remand not required where claimant did not specifically claim obesity as an impairment, either in his disability application or at his hearing, and although references to his weight in the medical records were likely sufficient to alert the ALJ to the impairment, the claimant did not specify how his obesity further impaired his ability to work, but merely speculated that his weight makes it more difficult to stand and walk).

## CONCLUSION

After careful review, the undersigned concludes the ALJ's failure to include the word "repetitive" in the hypothetical posed to the vocational expert constitutes only harmless error, because any of the jobs identified by the expert can be performed by an individual limited to repetitive tasks.  In addition, the ALJ's failure to discuss claimant's obesity does not require remand, because claimant never alleged he was disabled as a result of obesity and he failed to identify evidence in the record indicating obesity resulted in additional work-related limitations or exacerbated other impairments.

Accordingly, it is ORDERED:

1. The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2. The clerk is directed to close the file.

DONE AND ORDERED this 8th day of October, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**